941 So.2d 1233 (2006)
Eli BARON, Appellant,
v.
Mary Armbruster BARON, Appellee.
No. 2D06-1783.
District Court of Appeal of Florida, Second District.
November 17, 2006.
*1234 Lisa P. Kirby of Lisa P. Kirby, P.A., Naples, for Appellant.
J. Christopher Lombardo and Jennifer L. Szymanski of Woodward, Pires & Lombardo, P.A., Naples, for Appellee.
STRINGER, Judge.
Eli Baron (the Father) challenges various aspects of the trial court's postfinal judgment order which granted portions of Mary Baron's (the Mother's) "Verified Emergency Motion for Approval of Placement of Child in Therapeutic Boarding School or in the Alternative for Return of Minor Child." Because the trial court denied the Father's due process rights by refusing to continue the hearing on this motion, we reverse and remand for further proceedings.
The parties were divorced in 1996, at which time they had three minor children who lived primarily with the Mother. Starting in 2004, the parties began to experience significant issues with their youngest daughter, which manifested themselves first in an eating disorder and later in more disturbing behavioral problems. In 2006, after experiencing increasing defiance and physical aggression from the youngest daughter, the Mother enrolled her in a multiple-week wilderness *1235 program in North Carolina. This program was designed to break down the attitudes of rebellious teenagers and then rebuild their attitudes based on survival skills and cooperation. While the parties dispute whether the Father was aware of the daughter's pending enrollment in this program, it is undisputed that when the Father learned that the daughter was actually in North Carolina, he traveled there, removed her from the program, and took her to live with him in Miami.
On March 7, 2006, the Mother filed a "Verified Emergency Motion for Approval of Placement of Child in Therapeutic Boarding School or in the Alternative for Return of Minor Child." No hearing on the motion was set at that time. On March 14, counsel for the Father filed and served a notice of unavailability which indicated that she would be unavailable from March 15 until March 21. Despite this notice, on Friday, March 17, counsel for the Mother served a "Notice of Emergency Evidentiary Hearing" on the Father through counsel, which notice scheduled the hearing on the Mother's motion for Monday, March 20, at 8:30 a.m. The notice stated that ten minutes had been set aside for this "evidentiary hearing." It also stated that no continuances of the hearing would be permitted.[1]
At the start of the hearing, the Father orally moved for a continuance, noting that his attorney was in France but that she would be returning the next day. In addition, the courtroom clerk told the court that the Father's attorney was in France and "that's why her other case was continued." Despite this, the court refused to grant the Father's motion, noting that the hearing was set as an emergency hearing "because of the nature of the pleadings, they're verified motions."
The trial court then held a three-hour evidentiary hearing on the Mother's motion. The transcript of the hearing reflects that the Father is an Israeli native who sometimes had difficulty making himself understood in English. The transcript also reflects that the Mother's counsel presented the court with a notebook of exhibits relating to the hearing, which notebook had not been provided to the Father before the hearing. At the close of the hearing, the trial court granted the Mother's motion in part and ordered a variety of activities to occur, including various psychological assessments, none of which had been requested by either party. The Father now appeals from this order, contending that the trial court abused its discretion in not granting his motion for continuance.
The decision whether to grant or deny a motion for continuance is generally left to the broad discretion of the trial court. However, that discretion is not unlimited.
Although trial courts are endowed with rather broad discretion in deciding whether to grant or deny a motion for continuance, the exercise of that discretion is not absolute. We are charged with the task of reviewing a court's decision on a continuance motion and setting it aside if we determine the trial court abused its discretion. This court considers certain factors in making that determination, including: 1) whether the movant suffers injustice from the denial of the motion; 2) whether the underlying *1236 cause for the motion was unforeseen by the movant and whether the motion is based on dilatory tactics; and 3) whether prejudice and injustice will befall the opposing party if the motion is granted.
Myers v. Siegel, 920 So.2d 1241, 1242 (Fla. 5th DCA 2006) (internal citations omitted). In addition, it is generally reversible error to refuse to grant a motion for continuance when a party or his counsel is unavailable for physical or mental reasons, which unavailability prevents fair and adequate presentation of the party's case. A.P.D. Holdings, Inc. v. Reidel, 865 So.2d 682, 683 (Fla. 4th DCA 2004); Lopez v. Lopez, 689 So.2d 1218, 1219 (Fla. 5th DCA 1997); Ziegler v. Klein, 590 So.2d 1066, 1967 (Fla. 4th DCA 1991); see also Thompson v. Gen. Motors Corp., 439 So.2d 1012, 1013 (Fla. 2d DCA 1983) (holding that it was an abuse of discretion to refuse to grant continuance when attorney's illness prevented his appearance at trial).
Under the circumstances presented in this case, we hold that the trial court abused its discretion in refusing to grant the Father's motion for continuance. First, the underlying cause for the motion for continuance was unforeseen by the Father and his counsel. Neither the Father nor his counsel could have foreseen that either the court or counsel for the Mother would deliberately schedule an emergency evidentiary hearing with one business day's notice during a time when the Father's counsel had already notified everyone that she would be unavailable.
Second, it is clear that the Father was prejudiced by the denial of the motion. While the Father was permitted to speak at the hearing, he was not a lawyer and thus had limited ability to make proper objections to the testimony that the Mother offered at the hearing. Further, the Father's somewhat limited facility with the English language at times hampered his ability to make himself completely understood. In addition, the Father was given a notebook containing the Mother's proposed exhibits for the first time at the hearing and was given no opportunity to review its contents or make objections to the exhibits before they were admitted in evidence and reviewed by the trial court.
While it is true, as the Mother argues, that the Father was permitted to "testify" in opposition to the Mother's motion and to cross-examine the child's therapist, the right to be heard at an evidentiary hearing includes more than simply being allowed to be present and to speak. Instead, the right to be heard includes the right to "introduce evidence at a meaningful time and in a meaningful manner." Brinkley v. County of Flagler, 769 So.2d 468, 472 (Fla. 5th DCA 2000). It also includes the opportunity to cross-examine witnesses and to be heard on questions of law. Id. Here, the Father was not proceeding pro se and was not prepared to represent himself at the hearing. Further, the record shows that he received the notice of hearing on the Friday before the Monday morning hearing. Given these facts, the denial of the Father's motion resulted in him not being permitted to present evidence "in a meaningful manner." While the Mother contends that the Father should have secured other counsel to attend the hearing, even had he tried to do so, there is nothing in the record to show that alternate counsel could have become prepared for such a hearing over the course of a single weekend. The prejudice to the Father by being forced to "go it alone" is patent.
Third, there is nothing in the record to show that either the Mother or the child would have been prejudiced by the two-day delay needed in order to accommodate the Father's counsel. Nothing in the *1237 Mother's motion indicates that the child was in immediate physical or emotional danger. Rather, the Mother's "emergency" motion sought only court approval to place the child in a therapeutic wilderness program at some date to begin in the future. The motion was filed on March 7ten days before the notice of hearing was served and thirteen days before the hearing was actually held. Given the existing thirteen-day delay, a further two-day delay would not have resulted in prejudice or injustice to the Mother.
Because the Father's counsel was physically unable to be present for the hearing, which was scheduled despite full knowledge of her unavailability, and because the Father was prejudiced by the unavailability of his counsel, the trial court abused its discretion in refusing to grant the Father's motion for continuance. Accordingly, we must reverse and remand for a new hearing.
While our disposition on this issue renders most of the Father's remaining arguments moot, we address one other issue raised by the Father because it may arise at the new hearing. The Father argued in this appeal that the trial court erred in allowing the daughter's psychotherapist to testify at the hearing without first appointing a guardian ad litem to protect the daughter's patient-psychotherapist privilege if the daughter chose to exercise it. We disagree. Section 90.503(3)(d), Florida Statutes (2005), allows a psychotherapist to assert the privilege on behalf of a patient if the psychotherapist believes that it is in the patient's best interest to do so. Thus, the daughter's privilege was already protected, and no guardian ad litem was required. See Hughes v. Schatzberg, 872 So.2d 996, 998 (Fla. 4th DCA 2004). Therefore, the trial court need not appoint a guardian ad litem on remand for this purpose.
Reversed and remanded for further proceedings.
FULMER, C.J., and THREADGILL, EDWARD F., JR., SENIOR JUDGE, Concur.
NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.
NOTES
[1] The Mother states in this appeal that the trial court's judicial assistant called and scheduled the hearing with the Mother's counsel. Nothing in the record supports or refutes this statement; however, it is clear from the record that the notice of unavailability was provided to both the court and the Mother's counsel before this hearing was scheduled.