975 So.2d 431 (2007)
Michael P. NEAL, Appellant,
v.
Heather S. SWABY, Appellee.
No. 2D05-5286.
District Court of Appeal of Florida, Second District.
March 23, 2007.
Virginia R. Vetter, Tampa, for Appellant.
Michael P. Neal, pro se.
Mario J. Cabrera of The Law Office of Mario J. Cabrera, P.A., Bartow, for Appellee.
SALCINES, Judge.
Michael P. Neal appeals a paternity order. We affirm the undisputed determination that Mr. Neal is the father of the parties' two young children.[1] However, we reverse the remainder of the order and remand for further proceedings.
In May 2005, Mr. Neal filed a pro se petition to determine paternity and for related relief including the establishment *432 of parental responsibility, custody, visitation, child support, and health insurance for the children.[2] In conjunction with the petition, Mr. Neal filed a motion to deviate from the child support guidelines.[3] In June 2005, Ms. Swaby filed a pro se counterpetition asking that she be named the primary residential custodian and that Mr. Neal be ordered to have no visitation with the children. In her counterpetition, Ms. Swaby also addressed the grounds stated in Mr. Neal's motion to deviate from the child support guidelines.
In July 2005, the trial court scheduled two hearings, and entered orders referring the case to a magistrate. The hearings were memorialized by two written notices titled "Notification of Pro Se Hearing" presumably sent to each of the parties. The latter notice set the matter for a pro se hearing on August 24, 2005; designated a presiding magistrate; and allotted thirty minutes to determine Mr. Neal's petition for paternity, visitation, custody, and other related relief, as well as his pending motion to deviate from the child support guidelines. The order of referral explained, in bold print, that the referral to a magistrate required the consent of all parties, that the parties were entitled to have the matter heard by a judge, and that either party could object to the referral. Mr. Neal objected and a two-hour hearing was scheduled for August 31, 2005.
Both Mr. Neal and Ms. Swaby appeared for the scheduled final hearing on August 31, 2005.[4] Mr. Neal appeared on his own behalf, while Ms. Swaby appeared with counsel. As soon as the hearing commenced and before any testimony was introduced, Mr. Neal sought a "postponement." He explained that although he felt competent to represent himself in an entirely pro se proceeding, he did not feel comfortable representing himself in the hearing at which Ms. Swaby was represented by counsel. He stated that it had been his understanding that neither party was going to be represented by counsel at the hearing based on a telephone conversation he had with an individual in the clerk's office, whom he identified by first name, as well as discussions he had with several different attorneys two of whom were in a position to represent him. He stated:
But I was told that a promise to appear would have to be filed in which I would be notified. In which I would know that an attorney would be present and give me the opportunity to retain an attorney for myself so that I would not be in an uneven situation.
The trial court indicated that the information was wrong and that it did not believe anyone in the clerk's office would have provided such information. The court treated Mr. Neal's request for postponement as a motion for a continuance and denied it. Numerous times during the hearing Mr. Neal reiterated his concern that he felt ill-equipped to proceed without legal representation. At one point, the trial court responded:

*433 Mr. Neal, the next time we have to talk about this will be the last time we talk about this. My patience is not going to run much further than that. You understand. I made a ruling on that
. . . .
You've had your argument, I've made my ruling. We're going on.
Three witnesses testified during the hearingMr. Neal, Ms. Swaby, and Ms. Swaby's sister. Ms. Swaby and her sister described certain character traits of Mr. Neal and related their observations of Mr. Neal's interaction with his daughter and the daughter's behavior after Mr. Neal's prior visits. Mr. Neal disputed some of their testimony and described his version of prior events. No mental health experts testified regarding the daughter's behavior, and Ms. Swaby candidly conceded, "I have a child. But I do not know child psychology that much. I don't know why [the parties' daughter] was behaving the way she was."
At the conclusion of the hearing, the trial court made a detailed oral ruling. Regarding visitation, the trial court expressed some uncertainty but nonetheless made a definitive ruling.
The paternity order was issued in October 2005. In addition to establishing paternity, the order granted sole parental responsibility for the parties' two children to Ms. Swaby and designated her as the primary residential custodianit denied Mr. Neal's request for visitation.[5]
The trial court was faced with a difficult task in determining the issues before it in this case. The uncertainty expressed by the trial court concerning Mr. Neal's visitation rights, however, underscores why it should have granted the motion for a continuance to allow Mr. Neal the opportunity to retain counsel. The trial court was forced to make a decision concerning custody and visitation issues based only on the witnesses' interpretation of Mr. Neal's interaction with his daughter and her behavior following visitation. Although Mr. Neal was articulate, as were all the witnesses, he repeatedly expressed concerns about his questioning of the witnesses and he was placed at a distinct disadvantage due to his lack of knowledge concerning the nuances of courtroom procedure. The denial of the motion for a continuance led to the entry of a final order that was, at least in part, unsupported by the evidence.
We recognize that trial courts necessarily enjoy broad discretion in deciding whether to grant or deny a motion for continuance. Baron v. Baron, 941 So.2d 1233 (Fla. 2d DCA 2006). However, the exercise of that discretion is not absolute. Id. at 1235. In determining whether a trial court has abused its discretion in ruling on a motion for a continuance, this court considers certain factors. Id. Those factors include: "`1) whether the movant suffers injustice from the denial of the motion; 2) whether the underlying cause for the motion was unforeseen by the movant and whether the motion is based on dilatory tactics; and 3) whether prejudice and injustice will befall the opposing party if the motion is granted.'" Id. at 1235-36 (quoting Myers v. Siegel, 920 So.2d 1241, 1242 (Fla. 5th DCA 2006)).
In the present case, Mr. Neal clearly suffered injustice from the denial of the *434 motion. He was denied visitation with his children as a result of a hearing at which he was required to proceed without legal representation.
Further, the underlying cause for the motion was unforeseen. Mr. Neal's misapprehension was understandable particularly since all pleadings had been filed pro se prior to the hearing, no notice of appearance had been filed by counsel, and two prior court-generated notifications of hearing filed shortly before the final hearing had indicated that the matter was a pro se proceeding. Mr. Neal's request could hardly be viewed as dilatory given the fact that any delay in the case worked to his detriment in reuniting with his children at the earliest available opportunity. Indeed, it is clear from the record that until being surprised by the appearance of counsel for Ms. Swaby at the hearing, Mr. Neal had every intention to proceed with a hearing before a judge who would resolve the matters set forth in the parties' pleadings. Among other things, in seeking a delay Mr. Neal recognized that he had done a "tremendous amount of preparation" and had "driven down from Atlanta" but felt that the situation had become unequal and that it might create a disadvantage for him.
Finally, our record does not suggest that prejudice and injustice would have befallen Ms. Swaby if the motion had been granted. Although it is undoubtedly inconvenient and sometimes costly to appear for a hearing that is continued, those practical concerns certainly must yield in a situation such as that in the present case in which a trial court is faced with the daunting responsibility to determine matters concerning parents' rights and their children's welfare.
Given all the circumstances, the denial of the motion for a continuance was an abuse of discretion that requires a reversal of all matters decided in the order, other than the undisputed determination of paternity, and a remand for a new hearing.[6]
Affirmed in part, reversed in part, and remanded for further proceedings.
STRINGER, J., Concurs. ALTENBERND, Concurs with opinion.
ALTENBERND, Judge, Concurring.
I concur in this opinion. I write only to explain that I am not convinced that the trial judge intended to enter a final judgment as to any issue other than paternity. The "final judgment of paternity and other related issues" determined the issue of paternity for the two children. As to visitation, it gave Mr. Neal "no visitation at this time" and then proceeded to require the parties and the children to see a licensed mental health counselor and a psychologist, after which Mr. Neal was expressly authorized to "return to court to request contact with the minor children." The order determined that Mr. Neal would pay child support in accordance with the guidelines, but did not determine what that amount would be and expressly reserved jurisdiction to enter future orders providing for child support and related issues.
This court recently addressed a similar "final judgment" that left custody issues in limbo. See Merrigan v. Merrigan, 947 *435 So.2d 668 (Fla. 2d DCA 2007). As in this case, Merrigan involved pro se litigants and the court's attempt to efficiently process family law matters involving pro se litigants. While this court is sympathetic to this challenge, trial courts must ensure that the major issues are ripe for resolution before entering a "final judgment" in family law matters. A judgment that purports to finally resolve custody issues may have the unintended result of increasing the burden of proof for the noncustodial parent in future proceedings, even though a full adjudication of the custody issues was not performed on the merits. If the order on appeal in this case had been divided into a partial final judgment determining paternity and a temporary order on custody and visitation pending an additional hearing, I doubt that we would need to reverse the order.
NOTES
[1] Our record reflects that the parties' daughter was born January 5, 1999, and their son was born November 21, 2002.
[2] The form petition indicated that it was based on the 2000 version of the Florida Supreme Court Approved Family Law Form 12.983(a). It contained a number of items to be checked and also allowed the petitioner to provide further explanation. Among other things, Mr. Neal checked the items which provided for shared parental responsibility and undesignated primary residential custody. He requested visitation which he described as "a graduated visitation schedule."
[3] Mr. Neal's form motion indicated that it was based on the 2000 version of the Florida Supreme Court Approved Family Law Form 12.943.
[4] Mr. Neal resided in Atlanta, Georgia, and traveled from there to attend the hearing. Ms. Swaby resided in Avon Park, Florida.
[5] The order stated that Mr. Neal "has no visitation rights at this time." It provided a number of steps the completion of which would allow him to "return to court to request contact with the minor children." Those steps included evaluations of the parties and the children by a psychologist and a licensed mental health counselor who were to make recommendations to the trial court.
[6] In addition to paternity, custody, and visitation issues, the order addressed other responsibilities of the parties including the parents' need to obtain life insurance for the children's benefit and the allocation of child support, health insurance, and uncovered medical expenses. The order also included provisions that required certain drug testing, limited the removal of the children from the State of Florida, and directed that the noncustodial parent be apprised of the children's progress in school.