KAHN, J.
 

 Appellant challenges an adverse final judgment entered after the denial of a motion for continuance. We reverse and remand for a new trial, setting forth the unusual procedural development of the matter and the reasoning behind our decision.
 

 PROCEDURAL BACKGROUND
 

 The incident giving rise to this appeal occurred on the night of January 1, 2003, when Adam Garner struck a horse in the middle of the road as he drove home. Paralyzed from the neck down, Garner brought suit against appellee, Buford 0. Langford, on December 14, 2005, alleging Langford owned the horse and had acted negligently by failing to keep the animal properly fenced. On November 5, 2007, Garner died as a result of complications caused by injuries sustained in the accident. Before trial began, the parties stipulated that Garner’s mother, Elizabeth Delgado, was the proper plaintiff following her son’s death.
 
 *
 

 On January 13, 2009, the trial court ordered the parties to mediation. The parties agreed to settle the matter completely and therefore moved to continue a case management conference scheduled for May 12, 2009, to allow time to finalize the settlement, which was contingent upon Langford’s obtaining financing to pay appellant a sum of money. The court continued the case management conference until August 11, 2009, and scheduled a pretrial conference and jury trial for December 15, 2009, and December 28, 2009, respectively. In a pretrial order, the court ordered the parties to attend another round of mediation by November 1, 2009. Though Lang-ford had not yet executed the terms of the
 
 *713
 
 settlement, Garner’s counsel moved to dispense with any further mediation, citing the agreement reached after the initial mediation. The court denied the motion.
 

 In late September, Garner’s trial counsel, K.E. Pantas, was diagnosed with a life-threatening illness. As a citizen of Greece, Pantas planned to relocate to the Hellenic Republic to access the state-provided medical care to which Greek citizens are entitled. By October 5, 2009, Pantas had closed his office and transferred his litigation files to other attorneys. On November 24, 2009, Pantas attempted formally to transfer the instant matter to Pedro Ma-laret, Esq., via a joint stipulation for substitution of counsel. On December 10, 2009, Pantas sought a continuance of the pretrial conference and trial, explaining that Malaret, whose son was scheduled for surgery on a conflicting date, could not represent appellant. Pantas urged that denial of a continuance would deprive his client of due process. Simultaneously, Pantas formally moved to withdraw as counsel for appellant, citing his illness. The court denied the motion for continuance and refused to substitute counsel, leaving Pantas as counsel of record.
 

 The parties, by counsel, attended the pretrial conference on December 15, 2009. Present on behalf of Garner were Camilo Kafie, a former associate of Pantas, and Kelli Hastings, a colleague of Malaret. Kafie and Hastings again moved to continue the matter, noting that they would have just thirteen days to prepare for trial. Co-counsel argued appellant would be prejudiced through no fault of her own. The court nevertheless denied the motion.
 

 In addition to those exigencies created by Pantas’ illness, counsel for appellant encountered other difficulties in preparing for trial. Counsel attempted to serve a subpoena for trial on S.H. Floyd, the trooper who had investigated the accident underlying this litigation. The process server, however, was unable to effect service, as Floyd was no longer employed with the Florida Highway Patrol, his last known address where service was attempted. Counsel also attempted to serve a subpoena on Dr. T.R. Baxter, Langford’s veterinarian, at a Newberry, Florida, address. Again, the process server could not effect service, because the address was no longer valid.
 

 On the morning of trial, the trial judge held an in-chambers conference with the attorneys for both parties. Ms. Hastings again moved for a continuance of thirty days, arguing that appellant would be severely prejudiced if required to proceed without Floyd and Baxter as witnesses. Defense counsel responded that he did not oppose the request and also desired “to obtain photographs and the availability of two witnesses [Floyd and Baxter] that were either deposed or involved in the case prior to [his] involvement in the case.” Despite the seeming consensus, the court denied the motion, justifying its ruling by the considerable age of the case.
 

 To facilitate an expeditious resolution of the matter, the court attempted to locate Floyd. Just prior to the conclusion of the pretrial conference, however, the bailiff advised the judge that he could not locate the trooper. After the first day of trial, appellant’s counsel attempted again to serve Floyd, to no avail. Dr. Baxter did not appear for the trial, either, even though Langford had listed the doctor as a witness. Counsel for plaintiff did not receive the depositions of these witnesses until December 23, 2009, five days prior to trial.
 

 Before resting, plaintiffs counsel yet again moved for a continuance, presenting the affidavit of non-service of Dr. Baxter in support of the motion. In denying the request for continuance, the court observed that the plaintiff has a responsibili
 
 *714
 
 ty to subpoena her desired witnesses, but did not do so in this matter when the witness list was provided in October 2009. The jury returned a verdict finding that Langford had not been negligent in the maintenance of his fences. In consequence, the court entered a final judgment in favor of the defendant.
 

 ANALYSIS
 

 “The trial court’s determination of a motion for continuance is within [its] discretion and the court’s ruling thereon will not be disturbed ‘unless a palpable abuse of discretion is demonstrated.’ ”
 
 Robinson v. State,
 
 561 So.2d 419, 420 (Fla. 1st DCA 1990) (quoting
 
 Smith v. State,
 
 525 So.2d 477, 479 (Fla. 1st DCA 1988)). The decision to grant or deny a motion to continue is a matter resting within the sound discretion of the court.
 
 See Shands Teaching Hosp. and Clinics, Inc. v. Dunn,
 
 977 So.2d 594, 599 (Fla. 1st DCA 2007). “A ruling on a motion for continuance is treated with a relatively high degree of deference, even among other kinds of discretionary decisions.”
 
 Id.
 
 Accordingly, we accord “even greater deference to continuance orders than is required of other discretionary rulings.”
 
 See id.
 
 Given this highly deferential standard, we acknowledge that “a reversal for failure to grant a motion for continuance would be justified only in very rare situations.”
 
 Id.
 

 Courts also recognize, however, “cases in which the appellate court will have no alternative but to reverse, because the injustice caused by the denial of the motion outweighs the judicial policy of deferring to the trial judge.”
 
 Id.; Silverman v. Millner,
 
 514 So.2d 77 (Fla. 3d DCA 1987) (acknowledging that “[sjpecial circumstances sometimes exist ... in which the denial of a motion for continuance creates an injustice for the movant”). An appellate court considers certain factors in determining whether a trial court has abused its discretion by denying a motion to continue:
 

 Factors to be considered in determining whether the trial court abused its discretion in denying the motion for continuance include whether the denial of the continuance creates an injustice for the movant; whether the cause of the request for continuance was unforeseeable by the movant and not the result of dilatory practices; and whether the opposing party would suffer any prejudice or inconvenience as a result of a continuance.
 

 Fleming v. Fleming,
 
 710 So.2d 601, 603 (Fla. 4th DCA 1998);
 
 see also Baron v. Baron,
 
 941 So.2d 1233, 1235-36 (Fla. 2d DCA 2006);
 
 Fla. Fruit and Vegetable Ass’n v. Wells,
 
 755 So.2d 828, 829 (Fla. 5th DCA 2000). This list is not exhaustive.
 
 See, e.g., Baron Auctioneer, Inc. v. Ball,
 
 674 So.2d 212, 214 (Fla. 4th DCA 1996) (considering it an abuse of discretion “to deny such a motion [to continue] when it is based on the withdrawal of a party’s attorney for valid medical reasons within a few days of the tidal”);
 
 Ziegler v. Klein,
 
 590 So.2d 1066, 1067 (Fla. 4th DCA 1991) (“[W]hen undisputed facts reveal that the physical condition of either counsel or client prevents fair and adequate presentation of a case, failure to grant a continuance is reversible error.”);
 
 Thompson v. Gen. Motors Corp., Inc.,
 
 439 So.2d 1012, 1013 (Fla. 2d DCA 1983) (holding that “the trial court departed from the essential requirements of law in refusing to grant [a] continuance” where attorney’s illness prevented appearance at trial and new counsel “could not possibly become prepared to try a case of this magnitude by the time of its scheduled date”).
 

 The parties agree that Pantas’ illness and subsequent need to withdraw from the matter were unforeseen and attributable
 
 *715
 
 only to the vagaries of disease. The defendant party, Langford, did not oppose a continuance at trial and joined plaintiffs desire to authenticate photographs of the accident scene and ensure the availability of witnesses Floyd and Baxter, who were deposed before defense counsel became involved with the case. Based on the foregoing facts, we conclude that appellant has satisfied the second and third considerations set forth in the cases.
 

 Our focus, therefore, is on the first factor, whether the movant suffered an injustice by denial of the motion.
 
 See Fleming,
 
 710 So.2d at 603. The jury in this matter was asked to decide two threshold questions: (1) whether the defendant owned the horse involved in the automobile accident with plaintiff; and (2) whether the defendant carelessly or negligently permitted his livestock to run at large on a public road, resulting in injury to the plaintiff. The jury returned a verdict in favor of the defendant, affirming that defendant owned the horse involved in the accident, but declining to find that defendant had been negligent.
 

 Appellant asserts that she suffered an injustice because the denial of the motion effectively deprived her case of the testimony of witnesses Floyd and Baxter. Appellant concedes that additional evidence on the question of ownership of the horse would not be useful to her case, but urges persuasively that one or both unavailable witnesses can offer new testimony as it pertains to the question of negligence, on which appellant lost at trial.
 

 The case, like
 
 Dunn,
 
 presents the “very rare situation[]” justifying reversal.
 
 See
 
 977 So.2d at 599. The record indicates that Floyd responded to the scene of the accident, took pictures of the deceased animal, and prepared an investigation report in connection therewith. The testimony of trooper Floyd therefore promised the most contemporaneous and perhaps most objective account of the accident scene of anyone available. We need not speculate as to the exact effect of the trooper’s testimony, but infer, based on his investigation of the incident, that the trooper can offer some perspective as to the condition of the fencing in and around Langford’s property at the time of the collision. Accordingly, the denial of the motion for continuance worked an injustice on the appellant, satisfying the first of the factors.
 
 See Silverman,
 
 514 So.2d at 79 (reversing order denying motion for continuance because testimony of defendant, unavailable because of illness, was “necessary for a fair and adequate presentation of the defendant’s case, as the defendant was the witness most able to present testimony on [vital] matters”).
 

 Considering the need for balance, we respectfully do not see that the trial court could cite any sufficiently just reason to deny the motion, even given the age of the case. Pantas had fallen ill and Malaret, his intended replacement, also encountered extenuating circumstances not of his making.
 
 See Dunn,
 
 977 So.2d at 600 (concluding hospital was not responsible for pregnancy of key witness, which kept her from testifying at trial on hospital’s behalf);
 
 Silverman,
 
 514 So.2d at 79 (determining that “defendant’s illness and consequent unavailability for trial were unforeseeable, unlike the circumstances in other cases in which the attorneys could have anticipated that their clients or witnesses would not be available for trial”). By the time Kafie and Hastings assumed responsibility for the matter on or around December 15, 2009, substitute counsel had but thirteen days, coinciding with the holiday season, to subpoena and secure the appearance of witnesses and prepare a theory of the case. Counsel for Langford, moreover, not only did not oppose the request for
 
 *716
 
 continuance, but joined it.
 
 See Silverman,
 
 514 So.2d at 78 (highlighting court’s obligation to rectify injustice visited upon moving party by denial of motion for continuance, particularly “where the opposing party would suffer no injury or great inconvenience as a result of [the] continuance”). Such a unique cascade of events overcomes the trial court’s legitimate concern to dispose of this case. The judgment is REVERSED, and the matter REMANDED for a new trial.
 

 WOLF and WEBSTER, JJ., concur.
 

 *
 

 Despite the apparent stipulation to substitute Delgado, who was appointed administrator of the Garner estate, as plaintiff, the change was never effectuated. This must be corrected on remand.