WESTERN UNION TELEGRAPH COMPANY, v. C. E. SUIT

15 So. (2nd) 33                                     June Term, 1943
September 21, 1943                                     Division B
Rehearing Denied October 6, 1943

*Edward R. Copeland* and *J. Julien Southerland,* for petitioner.

*Lyle D. Holcomb,* for respondent.

BROWN, J.:

Certiorari to review appellate judgment of Circuit Court in and for Dade County affirming judgment of Civil Court of Record.

The declaration sought the recovery of damages for plaintiff's mental pain and anguish, under Section 363.06 Fla. Statutes 1941, formerly Section 6352 C.G.L., 4388 R.G.S., resulting from the negligent failure of the defendant to promptly transmit and deliver a certain telegram.

Prior to the enactment of this statute in 1913, mental pain and suffering did not constitute an element of damage for which a recovery could be had. Such was the common law, and this Court so held in International Ocean Telegraph Co. v. Saunders, 32 Fla. 434, 14 So. 148, 21 L.R.A. 810. In that case we held such an action, even though sounding in tort, was based on breach of contract, and was for compensative damages for the negligent failure of the telegraph company to promptly send or deliver a telegram, but that mental pain and suffering was not an element of damage for which recovery could be had in such cases, because of the impossibility of proving or fixing a monetary value thereon. See also a reference to this case in Western Union Tel. Co. v. Wells, 50 Fla. 474, 39 So. 830, and in Dunahoo v. Bess, 146 Fla. 182,

200 So. 441. In cases of this kind arising since the enactment of this statute, we have, of course, held otherwise. Western Union Tel. Co. v. Taylor, 100 Fla. 398, 100 So. 163, and Western Union Tel. Co. v. Redding, 100 Fla. 495, 129 So. 473. We also have a statute under which the parents of a minor child can recover damages for the loss of services and the mental pain and suffering caused by the wrongful or negligent death of such child. In the opinion in Florida Dairies Co. v. Rogers, 119 Fla. 451, 161 So. 85, the court again called attention to the difficulty involved in measuring compensation for mental pain and suffering in money. In that case it was also said that damages for mental pain and suffering are generally regarded as in the nature of compensatory, and not as punitive, damages. As to the nature of punitive, sometimes called vindicative or exemplary damages, see 15 Am. Jur. 698, et seq., and Fla. East Coast Ry. Co. v. McRoberts, 111 Fla. 279, 149 So. 631, in which case we held that punitive damages cannot be considered as incident to damages recoverable under our wrongful death statute. Nor is there anything in the language used in the section of the statute under which this suit was brought (363.06 Fla. Statutes, 1941, 6352 C.G.L.) to indicate that in cases brought thereunder punitive damages are recoverable as an incident to the recovery of damages for mental suffering and anguish "resulting from the negligent failure to promptly transmit or promptly deliver" a telegram "received for transmission and delivery." The statute did make, for the first time in Florida, compensation for mental pain and anguish an element of recoverable damages in cases of this kind, when brought by the aggrieved party, either sender or sendee, even though the defendant company be guilty of nothing more than simple negligence; provided of course that such mental pain and suffering is the result of the "negligent failure to promptly transmit or promptly deliver such telegram." But the statute went no further. Thus the section of the statute here applicable, 363.06, makes possible the recovery, for mental pain and anguish, of compensatory, not punitive, damages. Nor did the declaration in this case claim, nor were the charges given at plaintiff's request predicated upon, any supposed right to

recover punitive damages. Nor did the declaration in this case claim, nor were the charges given at plaintiff's request predicated upon, any supposed right to recover punitive damages.

So the Circuit Court, on appeal in passing on the question of the alleged excessiveness of the verdict, applied an erroneous principle of law when it held that: "Damages allowed by law under facts such as these are more punitive than compensatory. The law permits civil punishment in order to better insure that the public utility will better discharge its duty to the public."

This case was tried before a jury on May 12, 1942, and verdict rendered in the civil court of record, without the defendant or its attorney being present, due to the illness of defendant's only Miami attorney, Mr. J. Julien Southerland, a reputable member of the bar, who has handled the case for defendant from its inception. The case was at issue on plaintiff's amended declaration, plea of the general issue thereto, and a special traverse of one material allegation of fact contained in the declaration. The defendant had no knowledge of its attorney's illness and no notice that the case had been set for trial on May 12, 1942, nor did its attorney have any notice or knowledge that the case has been set for trial that day until 9:30 a. m., on the morning of May 12th, just before the case was tried, when counsel for plaintiff, also a reputable member of the bar, noticing his absence, telephoned his office and was told that he was at home ill and that his office had not checked the local paper, the Miami Review and Daily Record, which shows what is going on in the courts, and the setting of cases, and did not know that the case had been set for trial. Mr. Southerland, who evidently had no law partner, was then contacted by telephone at his home and when informed that the case was about to be called for trial, he told plaintiff's counsel that he was ill and under a doctor's care and under orders not to leave his home and was not in a physical condition to try the case, and to so inform the court (the judge being on the bench and could not be reached by phone) and that he requested that the case be continued, or passed to the next day, or to that afternoon, or

until he could dress and reach the court-room. Counsel for plaintiff, as shown by his affidavit, readily agreed to and did communicate this statement and request to the court, but, guided we are sure by what he thought to be his duty to his client, he told counsel for defendant, in this telephone conversation with him, that he could not agree to any further postponement; that the case had been twice continued at defendant's request and that it had been agreed between counsel that the case would not be further continued but would be set for trial at the next term of the court without further notice; that the plaintiff and his witnesses were present in court and that all of them had to secure releases from their employment, and that one was employed by the railway, making it difficult and inconvenient for him to attend the trial; that the next case on the calendar was ready for trial and that unless this case was immediately taken up, the next would be, and would require a day or more to try.

Defendant's counsel also called the judge's office and asked his secretary to tell the judge that he had been and was ill and did not know that this case was set for trial that day, and that he would come to the court room as quickly as was physically possible; also his physician called the judge's office and stated that Mr. Southerland was confined to his bed and wholly incapacitated to try a case that day. Nevertheless, defendant's counsel got up and dressed and went from his home over at Miami Beach, to the court room, but when he arrived there a few minutes after 11 o'clock the trial had been concluded. He then filed a motion for new trial on the ground of excessiveness of the verdict, and also the facts above alluded to with regard to his illness, which was later supported by an amended motion and his physician's affidavit. The motion for new trial was denied, but a rehearing granted, and on rehearing the court entered an order briefly reviewing the facts above brought out and reached the conclusion that the failure of defendant to find out when the case was set for trial was due to his neglect to use the usual methods of securing such information, and that in view of all the circumstances defendant's counsel, who was in ill health at the time of the second continuance, might reasonably have antici-

pated that he would not be able to try the case at the succeeding term, and could have taken precautions to provide against such a contingency; that plaintiff had come from Madison, Florida; had his witnesses present, and would be materially prejudiced and injured by the granting of a new trial and that no error having been made to appear, the order denying the motion for new trial was allowed to stand.

But the physician's sworn statement showed that Mr. Southerland had been critically ill during March, April and May, 1942; that during April his condition had improved, but that, contrary to instructions, he did try a case from April 20th to 24th, as a result of which he suffered a serious relapse and was confined to his home, and on May 1st his condition was such that he was strictly instructed to stay in bed until further orders. That on May 12th he was still confined to his bed and in no condition to attend to business or try any sort of a law suit. This affidavit does not appear to have been contradicted in any way. On these facts, it appears that the charge of negligence on the part of defendant's attorney is not supported. Indeed, it shows that his overly-optimistic endeavor to keep up with his business in spite of the doctor's orders brought on a serious relapse the latter part of April, from which he was still confined to his bed on the morning of May 12th when, contrary to his doctor's orders, he got up and went to the court room when he learned that the case was set for trial that morning.

We realize that the trial judge had a rather delicate situation to deal with, and that in view of the fact that the court had already twice continued the case at the request of defendant's counsel, and the plaintiff and his witnesses being present when the case was called, and demanding a trial, he felt it to be his judicial duty, in spite of the request of defendant's counsel for at least a brief postponement on account of his illness, to go ahead and try the case, and also to deny the motion for a new trial. But our analysis of this record convinces us that the absence of a defendant and its counsel was due entirely to a providential cause—the actual, not feigned, illness of defendant's counsel. This being the case, there was "another way out" for the trial judge. He could

have granted an adjournment of the trial for such time as he thought proper and entered at once a judgment against the defendant for the per diem and mileage of plaintiff and his witnesses. See Sec. 54.07 F.S.A. 1941. While it is the duty of trial courts to disregard frivolous efforts for delay and to expedite trials as much as is judicially possible, trials on the merits, where both parties have an opportunity to be heard, are most desirable, and should be had when it is fairly and judicially possible so to do.

There is one old case and three comparatively recent cases which have a bearing upon this question: Williams v. Dickenson, 28 Fla. 90, 9 So. 847; Courtney v. Central Trust Co., 112 Fla. 298, 150 So. 276; Jones v. State, 147 Fla. 677, 3 So. (2nd) 388, (in which the court was not informed of counsel's indisposition until after trial); Ford v. Ford, 150 Fla. 717, 8 So. (2nd) 495. In Courtney v. Central Trust Co., supra, the wife of the defendant's attorney was critically ill; he had not been able to properly prepare for the trial, and was subject to being called to her bed side at anytime. Continuance was denied. The trial proceeded, another attorney being employed to represent the defendant. In that case, this Court, among other things, said:

"While much must be left to the discretion of a trial judge in a matter like this, and this Court is always most reluctant and hesitant in reversing judgments rendered after continuances have been applied for and denied, yet we have not hesitated to consistently declare that, when a trial judge perceives that in consequences of inadvertance of counsel, *or other cause,* the rigid enforcement of rules of procedure would defeat the great object for which they were established, it is his duty to so relax them (when it can be done without injustice to any) as to make them subserve their true purpose, which is to promote the true administration of justice. See Barber v. State, 5 Fla. 199 (text 204). . . .

"In this case it seems to a majority of this Court that, under the peculiar circumstances here shown in open court, supported by the written representation of an upright and honorable member of the bar, that through no fault nor neglect of his client, but solely through a personal misfortune

that had befallen his client's counsel, his client's case if then tried, would be forced to trial either with an attorney whose mental attitude on account of his wife's illness, could not do the defendant's case justice, or in lieu of that alternative, with a different counsel just called into the case as the record shows, and unfamiliar with the intricacies of the case to be tried, called for an exercise of that sound discretion vested in trial judges, the refusal to exercise which may be ground for the award of a new trial in order that justice may not only prevail in fact, but that the trial had and judgment rendered be free of the suspicion that it was in anywise the result of the personal misfortune of the unsuccessful litigant in being compelled to rely for his representation upon other than the one attorney in whom he had placed his confidence when he engaged him to handle the trial of the case before the jury."

In that case a large verdict was rendered against the defendant. Motion for new trial was denied. This Court, although recognizing in its opinion the general rule that a motion for continuance or postponement is addressed to the sound judicial discretion of the trial judge, whose ruling will not be readily disturbed, reversed the judgment for the reasons above indicated. The exercise of judicial discretion is subject to review, for the best and ablest of trial judges some times fall into error; and appellate courts too, for that matter, as shown by their action on petitions for rehearing, when they not infrequently correct errors committed in their opinions and decisions on the original hearing. Here we have a case where the defendant was deprived of representation by its counsel at the trial and a verdict of $1250.00 was rendered, without the defendant having had the opportunity to present one word of rebuttal testimony or any evidence whatever in support of its plea to the merits, all due, as we see it, to the illness of its attorney, for which the defendant of course was not responsible and of which it was ignorant. Therefore the action of the trial court, affirmed by the circuit court, verged upon, if indeed it did not directly amount to, a denial of due process—a constitutional guarantee, not only of notice, but of an opportunity to be heard before final judgment is rendered.

498

Writ of certiorari is granted, and the record of the proceedings below having heretofore been certified to this Court, the appellate judgment of the Circuit Court is quashed, and the cause remanded for further proceedings not inconsistent with the foregoing opinion.

BUFORD, C. J., THOMAS and SEBRING, JJ., concur.