NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

EDIOL TOPALLI and IRIDA TOPALLI,       )
                                       )
        Appellants,                    )
                                       )
v.                                     )       Case No. 2D18-617
                                       )
EDDIE FELICIANO and BAY COLONY         )
COMMUNITY ASSOCIATION, INC.,           )
                                       )
        Appellees.                     )
                                       )
_____)

Opinion filed March 22, 2019.

Appeal from the Circuit Court for Collier
County; James R. Shenko, Judge.

James M. Moran of Marc L. Shapiro, P.A.,
Naples, for Appellants.

Michael R. D'Lugo of Wicker Smith O'Hara
McCoy & Ford, P.A., Orlando, for
Appellees.


LUCAS, Judge.

        Eriol and Irida Topalli, the plaintiffs below, appeal the entry of a final

judgment assessing attorney's fees against them.[1]  The fee judgment arose from their

_____
        [1]In case no. 2D17-3993, they appeal a separate judgment that assessed
related costs against them; both appeals arise from the same case and circumstances.
Neither party requested consolidation of the appeals.

"agreement" (a term we use loosely) to pay some measure of the costs incurred by the defendants below, Eddie Feliciano and Bay Colony Community Association, Inc., in connection with a requested continuance of the jury trial by the Topallis. The Topallis make several arguments in this appeal. Unfortunately, we are precluded from considering most of the issues they have raised because of the very sparse appellate record the Topallis have chosen to present. However, there is error on the face of the judgment that requires reversal for the reasons we will explain below.

I.

From what we can glean from the record, Mr. Topalli was allegedly injured while riding a bicycle when he collided with Mr. Feliciano, who was driving a motor vehicle that belonged to Bay Colony Community Association, Inc. The Topallis filed a complaint against both defendants on January 22, 2016. The defendants, who were represented by the same counsel, filed an answer and affirmative defenses, and the case proceeded in due course. It appears that the matter was originally set for trial in October of 2016, then reset to January 10, 2017; however, based on the representations of the Topallis' lawyer that the trial would likely take between eight to ten days, the circuit court entered an order resetting the case again for the week of April 4, 2017.

According to the circuit court's docket entries, the parties appeared to be well on their way to trying the case in April. A not inconsiderable amount of discovery and depositions were taken and transcribed, various related discovery motions were filed and set for hearing, witness and exhibit lists were exchanged, and the parties filed

motions in limine. Then, on March 25, 2017, a Saturday, the Topallis' attorney filed a handwritten motion to withdraw as counsel.

We do not have the motion in our record. However, from a transcript of a hearing convened on March 27, 2017, the Topallis' attorney represented that he and his client had irreconcilable differences that made him "extremely concerned" with his responsibility in the matter. In response to the circuit court's question whether the rules of professional conduct necessitated counsel's withdrawal but without divulging further details, the attorney replied, "yes, sir, that's correct."

This apparently came as a surprise to Mr. Topalli. When he appeared at the hearing, Mr. Topalli (who speaks English as a second language) testified:

> I don't know what's happened for — because I remember
> well what's — but I know and I was telling to him, to my
> lawyer, I want to go before the judge about the case. If the
> judge find with the right wisdom, lawyer has always I was
> angry with him or whatever, always. As I want to go there,
> as I wanted to go there before the judge. I would say let the
> judge decide what's the call (phonetic). Because I don't
> know who (sic) I did. Did I did anything wrong?

For her part, Ms. Topalli explained to the circuit court that her husband had a brain injury, "and that's the reason that he takes it — he's very nervous when he argue with his lawyers, but I don't think that we have any big issue that his lawyers want to withdraw from the case."

Whatever may have transpired between attorney and client, the circuit court granted the motion to withdraw. In so ruling, the court recognized a dilemma the withdrawal created: with only a week remaining until its commencement, the upcoming jury trial would either have to be continued (which would impose a burden upon the defendants who had been preparing for the trial all along), or the Topallis would have to

represent themselves (which would, to put it mildly, impose a rather daunting burden upon the Topallis). In a case where, the court noted, the plaintiffs had included on their witness list seven emergency room doctors, seven radiologists, two neurologists, three EMT's, two orthopedists, and two neurosurgeons, the defendants would incur undue prejudice if the trial were delayed, and so the court ruled that the jury trial would remain set for the following week. As the circuit court explained to the Topallis, the Topallis had three options: first, they could attempt to try the case without a lawyer; second, they could hire a lawyer to try the case with a week of preparation; or third, they could voluntarily dismiss their complaint without prejudice and refile their lawsuit since they were still well within the statute of limitations period.

In the next few days, the Topallis were able to retain new counsel. On March 30, the Topallis' new attorney filed a motion to continue the trial. The motion was originally denied by a written order in which the court stated that the Topallis "have elected to proceed to trial pro se."[2] On the morning of April 4, before the venire panel had been brought into the courtroom, the Topallis' counsel renewed their motion for a continuance and explained: "This is a case that involves multiple expert witnesses, a reconstruction expert, an economist, vocational rehabilitationist and multiple doctors[.] [I]t's a case that involves a closed-head injury and a surgery to the neck[.] [I]t is just a physical impossibility for me to have prepared to do this trial." The Topallis' lawyer further argued that the defendants would incur only a minimal cost if the case were simply rolled over to the next available trial docket, while the Topallis would experience

---

[2]In all likelihood, the court was inferring that the Topallis' new attorney, who had filed a "limited notice of appearance," had not been retained as trial counsel. The status of representation was clarified later when counsel appeared at the trial.

a tremendous hardship if they had to dismiss their complaint and "start all over again" because they were already living on borrowed funds. Then, counsel brought up an idea, almost innocuously, that would become the feature of this appeal: "So I would ask the Court to respectfully grant a short continuance. My client has said at the previous pretrial conference that they would agree to be responsible for any costs associated with the delay that the Defendant incurred."

Defense counsel strenuously opposed a continuance because, as he pointed out, his clients and their witnesses were ready and fully prepared to try the case at that time. However, defense counsel allowed, if the court were inclined to grant the Topallis' motion, the court should award the defendants their attorney's fees and costs that were incurred as a result of the continuance. As counsel pointed out: "There are expenses. The [d]efense, like I said, has moved mountains to get this case ready for trial." In response, the Topallis' attorney again represented that his client would not object to paying the costs associated with the defense having to "re-prepare" for the case. The Topallis' lawyer emphasized it would not be appropriate "to charge [the Topallis] for costs all the way back to the beginning, but I think it would be appropriate for the costs associated with the delay."

Following the attorneys' cues, the circuit court granted the Topallis' motion, but elected to make the relief contingent upon the Topallis' payment of the defendants' attorney's fees and costs. The court found that the defendants would be entitled to recover their costs, but reserved deciding the amount of costs until it could convene an evidentiary hearing. Similarly, the court reserved on making a decision as

- 5 -

to the defendants' entitlement and amount of attorney's fees, but seemed to indicate that some amount of attorney's fees would be appropriate.

The circuit court stayed the litigation in order to convene two evidentiary hearings on the defendants' request to recover fees and costs. At the conclusion of these hearings, the circuit court entered not an order, but a judgment, the final judgment now on appeal. In its Final Judgment Taxing Attorney's Fees Against Plaintiffs, the court determined that the defendants were entitled to recover attorney's fees of 164.3 hours at a billing rate of $500 per hour, 50.8 hours at $350 per hour, and 3.5 hours at $250 per hour, and paralegal's fees of 34.4 hours at $150 per hour for a total of $105,965. The court also tacked on the fee of a fee expert who apparently testified at the hearing for an additional $3000. After it had added prejudgment interest, the final total of the judgment—which had ostensibly been entered to effectuate a short continuance of a jury trial—was $110,817.32.

We do not have a transcript of what transpired at these evidentiary hearings. However, two aspects of the judgment on appeal are readily apparent: first of all, it is an executable money judgment (that conspicuously omits a preface stating what precipitated the judgment's entry); and second, the amount of fees awarded in the judgment is extraordinarily large given the context in which the judgment was entered. There is no explanation, no finding, and no legal citation within the judgment that might explain what prompted the circuit court to impose a money judgment against the plaintiffs for the continuance they had requested. Nor is it explained within the judgment why the defendants' attorneys, whose billing invoices (which were filed and included

within our record) generally reflected a billing rate of $180 an hour, had become entitled to $500 and $350 per hour for purposes of the fee judgment.

The circuit court has continued to stay the proceedings, and the Topallis filed the appeal now before us.

In their appeal, the Topallis variously argue that the circuit court should never have granted their prior lawyer's motion to withdraw, or that, having allowed the withdrawal, the court should have granted the Topallis' repeated motions for a continuance without imposing any fee or cost conditions (which, relatedly, the Topallis claim were only agreed to "under duress"), or that the entry of any judgment like this infringes upon their constitutional right of access to the courts and due process. Some of their arguments might have been availing had the Topallis properly raised them and then appealed any of those rulings at the conclusion of a trial.[3] They did not do that. Instead, they received the relief they had requested from the circuit court, conditioned upon a payment their attorney represented they would make. Their trial was continued. But the condition their lawyer had proposed turned out to be much more onerous than they expected. They now have a rather substantial money judgment recorded against them. The only question we can consider, then, is whether the Topallis are entitled to appellate relief from that judgment.

---

[3]Indeed, at oral argument, Appellees' counsel very candidly stated that had the Topallis gone forward with the trial and then appealed the denial of their requested continuance, Appellees would have conceded the circuit court had abused its discretion. As to the constitutional arguments, the Topallis never raised them below; hence, we will not consider them here.

II.

Preliminarily, we are faced with a difficult question of categorizing this fee judgment. What source of law predicated the entry of an $110,817.32 judgment for attorney's fees against the Topallis in a lawsuit that has never been adjudicated on the merits? The answer to that question is not at all obvious. In fact, we have found it necessary to employ the process of elimination to arrive at a conclusion on the matter.

A.

Under the "American Rule," attorney's fees in civil litigation are ordinarily borne by the party who incurs them, and a court cannot award the recovery of attorney's fees from an opposing litigant unless "authorized by statute or by agreement of the parties." See Fla. Patient's Comp. Fund v. Rowe, 472 So. 2d 1145, 1148 (Fla. 1985); see also Trytek v. Gale Indus., Inc., 3 So. 3d 1194, 1198 (Fla. 2009) ("It is well-settled that attorney's fees can derive only from either a statutory basis or an agreement between the parties." (citing State Farm Fire & Cas. Co. v. Palma, 629 So. 2d 830, 832 (Fla. 1993))). "Agreement of the parties" is ordinarily understood in this context to mean an agreement akin to an enforceable contract; "statute" means just what the term implies—a duly enacted act of the legislature.

This small list of exceptions to the American Rule has expanded—albeit ever so slightly—over time. Cf. Reiterer v. Monteil, 98 So. 3d 586, 587 (Fla. 2d DCA 2012) (observing that "[w]e hesitate to create exceptions" to the American Rule that "generally, a litigant pays for his or her own fees in a lawsuit"). In litigation to establish or benefit a "common fund," a party may recover its attorney's fees from the proceeds of the fund. See, e.g., Fid. & Cas. Co. of N.Y. v. O'Shea, 397 So. 2d 1196, 1198 (Fla. 2d

DCA 1981) (recognizing the "common fund rule" that permits an attorney's fee award "from a fund or estate which has been benefitted by the rendering of legal services" (quoting Estate of Hampton v. Fairchild-Fla. Constr. Co., 341 So. 2d 759, 761 (Fla. 1976))). The Florida Supreme Court's rules of procedure may also provide litigants with recourse to recover their attorney's fees and costs during the course of litigation. See, e.g., Fla. R. Civ. P. 1.380; Fla. R. App. P. 9.400, .410. And in cases of especially pernicious litigation or inequitable conduct, courts have the "inherent authority" to award attorney's fees as a sanction. See Moakley v. Smallwood, 826 So. 2d 221, 226 (Fla. 2002); Rowe, 472 So. 2d at 1148.

None of those bases are present here, however.

First, there was no contract between the Topallis and the defendants that provided for the payment of the defendants' attorney's fees. Indeed, none of the parties in this appeal have suggested that the fee judgment was predicated upon a contractual agreement. Given that the only "consideration" (a continuance of a jury trial) would have been something only the circuit court could have provided as an exercise of its judicial discretion, that the actual amount of fees and costs that were the subject of this purported agreement has been in continuous dispute, and how highly unlikely it was that the Topallis' lawyer ever had the authority to agree to the entry of a money judgment against his clients, we can dispense with that as a basis fairly easily.[4]

---

[4]See Land Co. of Osceola Cty., LLC v. Genesis Concepts, Inc., 169 So. 3d 243, 247 (Fla. 4th DCA 2015) ("An enforceable contract, requires 'an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained.' " (quoting W. Constr., Inc. v. Fla. Blacktop, Inc., 88 So. 3d 301, 304 (Fla. 4th DCA 2012))); see also Harris v. Dep't of Revenue ex rel. Insixiengmay, 191 So. 3d 921, 924 (Fla. 2d DCA 2016) ("Trial courts enjoy broad discretion in ruling on motions for continuance." (citing Neal v. Swaby, 975 So. 2d 431,

Second, there is no applicable statute that could form the basis of the fee judgment the circuit court entered. Here as well, no one has argued otherwise in this appeal.

Third, this is a personal injury case in which the Topallis claim to have sustained damages as a result of a motor vehicle accident. It is not a proceeding that concerns a common fund in any way.

Fourth, nothing within Florida Rule of Civil Procedure 1.460, the rule that governs continuances, authorizes a court to condition a continuance upon the payment of an opposing party's attorney's fees or costs. The final judgment does not recite, and we have not found, any rule of procedure that could have authorized the entry of a fee judgment under these circumstances.

Fifth, the fee judgment was not entered as a sanction. The Topallis (perhaps confronting the very characterization issue we are struggling through now) argue that we should liken the fee judgment to a bad faith sanction that the circuit court imposed against them. We decline to do so because, from our view of the record, it was no such thing. Nor will we, as the Topallis urge us, ascribe some hidden motive behind the presiding judge's ruling in this case. Whatever error he might have made, the circuit judge capably and dutifully considered what our court has described as the

---

433 (Fla. 2d DCA 2007))); cf. Dixie Operating Co. v. Exxon Co., U.S.A., 493 So. 2d 61, 63 (Fla. 1st DCA 1986) ("It is well-settled in Florida that a settlement agreement entered into by an attorney is enforceable only when it has been determined that the attorney was given 'clear and unequivocal' authority by the client to compromise the claim." (quoting Nehleber v. Anzalone, 345 So. 2d 822, 823 (Fla. 4th DCA 1977))).

We are not suggesting that a litigant could not contractually agree to *support* an opposing litigant's motion for a continuance in exchange for compensation of some agreed upon amount of attorney's fees. That is not at all what happened here, though.

"Hobson's choice" that arises when an attorney is permitted to withdraw on the eve of a trial. See Garden v. Garden, 834 So. 2d 190, 193 (Fla. 2d DCA 2002).

And finally, the final judgment was obviously not the product of an adjudication on the merits of a claim. To the contrary, its entry—and presumably, its satisfaction—has effectively become a precondition to convening a trial in this litigation.

What, then, was the basis for this fee judgment?

B.

The answer to that question may be found in a small niche of case law that has gradually formed, a current and concise summation of which appears in this pronouncement from the Fifth District Court of Appeal: "A trial court has the authority to assess attorney's fees when one party moves for a continuance on the eve of trial and the resulting order is reviewed for an abuse of discretion." See Kay v. Kay, 988 So. 2d 1273, 1275-76 (Fla. 5th DCA 2008) (reversing award of $15,000 of attorney's fees and $481 of costs attributed to the grant of a continuance because, although expert testimony was not required to support the award, "the court abused [its] discretion by awarding fees and costs without evidence regarding the reason for the continuance and the amount of the fees and costs"). The Kay court's stated rule was not at all unprecedented. Accord Dep't of Children & Families v. M.G., 838 So. 2d 703, 704 (Fla. 5th DCA 2003) ("Under these circumstances, the trial court had the authority to assess attorney's fees occasioned by the belated request for a continuance. Because the attorney's fees were awarded in conjunction with the granting of the Department's motion for continuance, we reject the Department's contention that the absence of a contractual or statutory basis for the recovery of attorney's fees is fatal to the award.");

Brake v. Murphy, 693 So. 2d 663, 666 (Fla. 3d DCA 1997) ("[T]here is no abuse of discretion in conditioning an eve of trial continuance on payment of attorney's fees caused by delay.").  For lack of a better term, we may call this category of pretrial rulings—whereby a party obtains a requested continuance from a court upon the condition of paying an opposing party's attorney's fees and costs—a conditional continuance.  Where it has been recognized, the conditional continuance has simply been stated as a rule of authorization, without further rationale, usually by reference to a prior case citation, without further elaboration.  Our court has never expressly held that a trial court has the authority to condition a continuance upon the payment of an opposing party's attorney's fees.  But we must acknowledge the pronouncements from our sister districts which have.  From the record in the case at bar, it appears that the attorneys for the litigants were able to persuade the court below that it could enter a conditional continuance based on some of these pronouncements.

Had the Topallis preserved and argued the issue, we might have parted ways with those courts that have authorized conditional continuances upon the payment of attorney's fees.  As has already been noted, there is simply no organic legal authority—no statute, contract, or claim—to support a fee order as a condition for a continuance.  The applicable procedural rule, rule 1.460, says nothing at all about awarding attorney's fees or costs as a component of a trial court's discretion when considering granting a continuance, unlike other rules of civil procedure that, in other contexts, do.  Cf. Fla. R. Civ. P. 1.380.  Given the presumptive aversion against

- 12 -

ordering the payment of an opposing party's attorney's fees under the American Rule,[5] the pronouncements we find from the district courts of appeal in this regard would seem somewhat puzzling or, at least, counterintuitive.

Moreover, when we trace the origin of this rule's current iteration—that "[a] trial court has the authority to assess attorney's fees when one party moves for a continuance on the eve of trial," Kay, 988 So. 2d at 1275—we find a rule that, without a ratio decidendi to guide or constrain its course in the common law, has drifted far from its point of origin. Most of the recent decisions recognizing conditional continuances tend to cite to the case of Flea Market U.S.A., Inc. v. Cohen, 490 So. 2d 210 (Fla. 3d DCA 1986), as authority. We note that the litigants before us have also spent a considerable amount of time in their briefing and oral arguments discussing the Flea Market decision. But Flea Market's single paragraph opinion contains precisely one line and one case citation germane to that court's recognition of conditional continuances: "We find no abuse of discretion in the order under review, which conditioned granting the appellant's eve-of-trial motion for continuance upon the payment of the appellees' attorney's fees caused by the delay." Id. at 210. The case that the Flea Market court relied upon was Western Union Telegraph Co. v. Suit, 15 So. 2d 33 (Fla. 1943), which, as best as we can tell, appears to be the case of origin in Florida for this singular rule.[6]

---

[5]Cf. Talbott v. Am. Isuzu Motors, Inc., 934 So. 2d 643, 650 (Fla. 2d DCA 2006) (Kelly, J., dissenting) (discussing federal law and explaining that, "[w]hen the Supreme Court states that in construing attorney's fees provisions it is 'mindful of the fact that Congress legislates against the strong background of the American Rule,' Fogerty[ v. Fantasy Sports, 510 U.S. 517, 533 (1994)], what it means is that any analysis of what Congress intended starts with the presumption that fees are not recoverable").

Insofar as this is the wellspring of authority for conditional continuances in Florida Law, the Suit opinion merits closer reading.

In Suit, a defendant's counsel had become incapacitated on the day of trial. Id. at 34. The defendant moved for a continuance, but the plaintiff's attorney objected, arguing

> he could not agree to any further postponement; that the case had been twice continued at defendant's request and that it had been agreed between counsel that the case would not be further continued but would be set for trial at the next term of the court without further notice; that the plaintiff and his witnesses were present in court and that all of them had to secure releases from their employment, and that one was employed by the railway, making it difficult and inconvenient for him to attend the trial.

---

[6]The Flea Market opinion also included citations to the legal encyclopedia Florida Jurisprudence Second, and an article from the American Law Reports fourth edition, neither of which are, in and of themselves, of any binding, precedential force. Cf. Martin v. Ritcheson, 306 So. 2d 582, 586 (Fla. 1st DCA 1975) (rejecting insurance company's quotation from Florida Jurisprudence and observing that "[w]e are cited to no Florida case supporting the above quoted statement and our independent research has revealed none. Our interpretation of the statutory provisions . . . lead to a different conclusion."). We note that the Florida Jurisprudence section cited in Flea Market references only the Suit opinion (which does not support the proposition Flea Market asserted) and section 54.07, Florida Statutes (which, at the time of this edition of the Florida Jurisprudence's publication, had already been repealed). See 11 Fla. Jur. 2d Continuances § 40 (1979); ch. 67-254, § 49, Laws of Fla. (1967). The American Law Reports article discusses cases in which trial courts in other jurisdictions were found to have abused, or not abused, their discretion by imposing attorney's fees as a condition for granting a continuance. Romualdo P. Eclavea, Annotation, Continuances of Civil Case as Conditioned Upon Applicant's Payment of Costs or Expenses Incurred by Other Party, 9 A.L.R. 4th 1144 (1981). None of the cases discussed in the A.L.R. article, however, were from Florida. Id.

Id. at 34-35.  The circuit court denied the motion and the trial was held in the absence of

defense counsel.  Id. at 35.  On appeal, the Florida Supreme Court suggested an

alternative to denying the motion for continuance:

> We realize that the trial judge had a rather delicate
> situation to deal with, and that in view of the fact that the
> court had already twice continued the case at the request of
> defendant's counsel, and the plaintiff and his witnesses
> being present when the case was called, and demanding a
> trial, he felt it to be his judicial duty, in spite of the request of
> defendant's counsel for at least a brief postponement on
> account of his illness, to go ahead and try the case, and also
> to deny the motion for new trial.  But our analysis of this
> record convinces us that the absence of defendant and its
> counsel was due entirely to a providential cause—the actual,
> not feigned, illness of defendant's counsel.  This being the
> case, there was 'another way out' for the trial judge.  He
> could { "pageset": "S22 have granted an adjournment of the trial
> for such time as he thought proper and entered at once a
> judgment against the defendant for the per diem and
> mileage of plaintiff and his witnesses.

Id. (emphasis added).

There is, of course, a categorical difference between awarding per diem

and mileage costs of a party and its witnesses occasioned by a canceled trial and

awarding that party's attorney's fees for preparing for a canceled trial.  Cf. First

Protective Ins. Co. v. Featherston, 978 So. 2d 881, 884 (Fla. 2d DCA 2008) ("Unlike

costs, ordinarily attorney's fees are not recoverable and thus are not at issue. . . .  The

availability of a recovery of costs is part of the warp and woof of litigation."); Jennings v.

Habana Health Care Ctr., 183 So. 3d 1131, 1134 (Fla. 1st DCA 2015) ("But entitlement

to costs is distinct from entitlement to attorney's fees.").  The latter award would require

"a statute or . . . agreement of the parties."  Rowe, 472 So. 2d at 1148.  Yet, over the

years in Florida jurisprudence these two distinct categories of expenses—travel costs

and attorney's fees—somehow became conflated when it comes to granting continuances. See Kay, 988 So. 2d at 1275; M.G., 838 So. 2d at 704; Flea Market, 490 So. 2d at 210. And no court has yet explained why or how that happened.

C.

We make these observations to ensure that our decision today is not mistakenly construed as our having tacitly adopted the notion that a trial court may condition an order continuing a trial upon the payment of an opponent's attorney's fees. Indeed, in the absence of a statute, contract, or rule, we have some reservations about this practice—substantively, there is little support for it; procedurally, there is no guidance how to implement it; and pragmatically, it could, in some cases, pose a significant impediment upon a party's constitutional right of access to the courts.[7] But whether such an order was within the ambit of a trial court's power is not an argument the Topallis can make. Having represented to the court below that they would agree to pay a measure of the defendants' costs if the court granted a short continuance—and having received the continuance from the court on that representation—the Topallis cannot challenge in this appeal the ruling that they asked for. Cf. Tate v. Tate, 91 So. 3d 199, 204 (Fla. 2d DCA 2012) ("[T]he invited error rule prevents [a party] from complaining on appeal about a ruling [it] invited the trial court to make."). Nor can the Topallis raise an argument against the amount of fees in the judgment because they failed to provide a transcript of the evidentiary hearings in which the trial court

_____

[7]Cf. art. I, § 21, Fla. Const. ("The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."). The case at bar provides a cautionary example: the Topallis are effectively charged to pay over a hundred thousand dollars of their opponents' attorney's fees for the "privilege" of having the trial they were constitutionally entitled to.

- 16 -

determined the judgment amount.  Cf. Applegate v. Barnett Bank of Tallahassee, 377 So. 2d 1150, 1152 (Fla. 1979) ("Without a record of the trial proceedings, the appellate court [cannot] properly resolve the underlying factual issues so as to conclude that the trial court's judgment is not supported by the evidence or by an alternative theory."); Thomas v. Perkins, 723 So. 2d 293, 294 (Fla. 3d DCA 1998) (affirming a fee and cost award where the appellant failed to include a transcript of the fee and cost hearing in the record: "In the absence of a record of the evidence considered by the trial court in making this award, we cannot find that the trial court abused its discretion and must therefore affirm").

The only issue we may consider in this appeal is whether an error of law appears on the face of the judgment.  See generally Boone v. Boone, 3 So. 3d 403, 404 (Fla. 2d DCA 2009) ("Without a transcript, this court's review is limited to any errors that appear on the face of the trial court's order."); 7550 Bldg., Inc. v. Atl. Rack & Shelving, Inc., 999 So. 2d 663, 664 (Fla. 3d DCA 2008) ("Absent a transcript, this Court may reverse the decision 'only if an error of law appears on the face of the final judgment.' " (quoting Whelan v. Whelan, 736 So. 2d 732, 733 (Fla. 4th DCA 1999))).  And in that, we do find error.

We have before us an executable final judgment.  There is no stated legal basis for its entry,[8] no underlying claim, or counterclaim, or court sanction from which it sprung.  Its very existence is an anomaly for a pending civil case in which a trial on the

---

[8]The Final Judgment Taxing Attorney's Fees Against Plaintiffs states only that it was entered "upon Defendants' Sworn Motion for Court to Determine Amount of Attorney's Fees"—which, of course, only begs the question of why the defendants were entitled to such a judgment.

merits has never occurred, the judgment holders have never pled a claim for relief, and a sanction was never ordered. See Makar v. Inv'rs Real Estate Mgmt., Inc., 553 So. 2d 298, 299 (Fla. 1st DCA 1989) ("A judgment is a court's decision on the merits as to whether the plaintiff shall obtain the relief sought in the litigation." (first citing Francisco v. Victoria Marine Shipping, Inc., 486 So. 2d 1386, 1391 (Fla. 3d DCA 1986); then citing George Vining & Sons, Inc. v. Jones, 498 So. 2d 695, 697 (Fla. 5th DCA 1986))). No Florida court has ever imposed such an onerous condition, an adverse fee judgment, upon a litigant seeking a continuance; rather, for those courts that have recognized the payment of attorney's fees as an appropriate condition for a continuance, the underlying ruling appears to have been effectuated as a pretrial order. At most, that was what the Topallis acquiesced to in the case below, the entry of an order, which is markedly different from an executable final judgment. Indeed, in this case, there appears to be a facial inconsistency between this judgment's entry and the only articulated basis for its existence (the granting of a continuance)—this final judgment's enforcement is not conditioned on having a trial at all. The defendants could initiate collection proceedings against the Topallis even if their trial never happens. This civil judgment had no attendant legal basis for its entry and, as such, was erroneous.

## III.

Accordingly, we must reverse the final judgment below. Although we would question why a continuance needed to be conditioned upon anything at all (in light of the circumstances that were reported to us in this appeal), we do not reach the issue of whether a trial court may enter an order granting a continuance conditioned

upon the payment of an adversary's attorney's fees.  It is a problematic notion, as we have already discussed, but one we must leave for another day.

Reversed and remanded.


ROTHSTEIN-YOUAKIM, J., Concurs.
MORRIS, J., Concurs in result only.